IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

KEITH REDDICK,           )
                              )
       Plaintiff,        )
                              )
    v.                 )     CASE NO. 2:19-cv-512-JTA
                              )        (WO)
CAPOUANO, BECKMAN, RUSSELL  )
& BURNETT, LLC, a Limited Liability  )
Company,                 )
                              )
       Defendant.    )

## <u>MEMORANDUM OPINION AND ORDER</u>

## I.    INTRODUCTION

Plaintiff Keith Reddick ("Plaintiff") filed this action against Capouano, Beckman, Russell & Burnett, LLC ("Defendant") alleging violations of the Federal Debt Collection Practices Act and several state tort claims.  Before the Court is Defendant's motion for summary judgment.  (Docs. No. 20, 21.)   The Court has carefully reviewed the motion, Plaintiff's response in opposition thereto (Doc. No. 27), and Defendant's reply (Doc. No. 30.)  Also before the Court are a motion to strike by Plaintiff (Doc. No. 28) and four motions to strike by Defendant (Docs. No. 31-34).  Timely responses have been submitted for each motion.  (Docs. No. 39-43.)

For the reasons set forth below, the Court finds that the motion for summary judgment (Doc. No. 20) is due to be GRANTED and the motions to strike are due to be DENIED (Docs. No. 28, 31-34).

## II.  SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions of file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323.  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id*. at 322-324.  A factual dispute is genuine if the evidence would allow a reasonable jury to find for the nonmoving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324.  To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita v. Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable

inferences must be drawn in its favor.  *See Anderson*, 477 U.S. at 255.  After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(e).  As stated by the Court in *Celotex*, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial," the moving party is entitled to summary judgment.  *Celotex*, 477 U.S. at 322.

### III.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff signed a "Financial Agreement" with Zelda Court Dental Care ("Zelda") wherein he agreed "to pay for services not covered by [his] insurance as well as any legal and/or collection fees necessary for the collection of this debt."  (Doc. No. 21-1 at 7 ("the Zelda Agreement").)  Zelda's custodian of records, Bridget Lyons, attests that Plaintiff signed the Zelda agreement[1] in October of 2006 while opening a family account for which his insurance policy would provide coverage for him and his then-wife Adriana Reddick ("Adriana").[2]  (*See* Affidavit of Bridget Lyons ("Lyons I"), Doc. No. 21-1 at 2-3; Supplemental Affidavit of Bridget Lyons ("Lyons II"), Doc. No. 30-1 at 3.)  Lyons states that Zelda regarded Plaintiff as the responsible party for all charges in the family account. (Doc. No. 21-1 at 2-3; Doc. No. 30-1 at 2, 3.)  Plaintiff has submitted an account history

---

[1] The copy of the Zelda agreement submitted by Defendant is undated.

[2]  The Court usually does not refer to spouses by their forename but, as one current spouse of Plaintiff <u>and</u> one former spouse of Plaintiff are involved in this matter, the Court refers to Adriana Reddick as "Adriana" for ease of reference.

report received from Zelda which shows a single running account for the Reddicks' services, payments and insurance credits.  (Doc. No. 27-7, Account History Report for Keith Reddick from July 1, 2010 through October 25, 2012.)  The account history contains several entries titled "PM Note" indicating that statements were processed for Plaintiff or Adriana and which reflect varying levels of urgency in requests for payment.  (Doc. No. 27-7.)  Of the thirty-two total PM notes, seven notes reference Adriana and the remaining notes reference Plaintiff.[3]

The account history shows that services for Adriana between September 14, 2011, and April 18, 2012, left a balance of $697.00, after her payment of $3,900.00 on March 2, 2012, and an insurance payment of $97.00 on April 18, 2012.  (Doc. No. 27-7.)  On April 13, 2012, the Reddicks entered into a separation agreement which held Plaintiff "solely responsible for all personal and marital debts and liabilities, including but not limited to: Credit cards, mortgages . . . or any other debt of any kind whatsoever, whether in his name only or held by the parties jointly, and shall indemnify and hold the Wife harmless from any efforts of any creditor to collect same."  (Doc. No. 21-2 at 1, ¶ 5.)  The Reddick's final decree of divorce specifically provided that their agreement was "adopted and deemed a part of this Decree" and would "be considered as a Pendente Lite Order of the court," thus binding both parties after their divorce became final on May 25, 2012.  (*Id*. at 2-3.)

On July 27, 2012, Zelda issued a notice informing Plaintiff that $697.00 was owed on his account.  On September 18, 2012, Zelda issued a formal demand for "payment in

---

[3] The explanatory descriptions corresponding to PM notes for Adriana are redacted.

4

full" to be received "within ten days[,]" which would have been September 28, 2012.  (Doc. No. 21-1 at 10, 12.)  Lyons attests that these documents were sent by United States Mail to the address provided by Plaintiff.  (Doc. No. 30-1 at 3.)  While these actions are noted in the account history, PM notes referencing Adriana were also entered on August 21, 2012; September 26, 2012; and October 15, 2012.  (Doc. No. 27-7 at 2.)  The Zelda records show that it rendered additional services at no cost to Adriana on October 25, 2012, and to Plaintiff on September 26, 2013.[4]  (Doc. No. 27-7 at 3; Doc. No. 30-1 at 6.)  Lyons states that the account was turned over to Defendant for collection after Plaintiff failed to make payment arrangements following the September 18, 2012, payment demand.  (Doc No. 21-1 at 4.)  An affidavit by Defendant Paul Beckman, a partner in the law firm named as defendant in this action, states that Plaintiff's mother and attorney-in-fact, Willie Clark, responded to his firm's collection letters in April 2018.  (*See* Affidavit of Paul Beckman, Jr. ("Beckman Affidavit"), Doc. No. 21-1 at 2.)  Clark advised Beckman that Plaintiff was incarcerated and that Adriana was responsible for the debt under the provisions of the couple's divorce decree.  (*Id*. at 3-4.)  Beckman subsequently obtained a copy of the Reddick's divorce decree and, on July 20, 2018, filed a small claims action in state court based upon his belief that Plaintiff was responsible for the debt under the terms of the divorce decree and the statute of limitations for the action had not expired.  (*Id*. at 4.)  In addition to the $697.00 balance with Zelda, Beckman sought recovery of court costs,

---

[4] Plaintiff "strongly disagrees" with Defendant's statement that he received services from Zelda in 2013 and argues that, if so, such fact would support his position that Zelda regarded Adriana as the responsible party for the previous balance.  (Doc. No. 27 at 19.)  There is no billing information included with the 2013 record of service from Zelda.

interest, and attorneys' fees, totaling an additional $519.78, in the small claims action. (Doc. No. 1-1.)

Plaintiff submits three affidavits in support of his position that Zelda knew he was not responsible for the debt and that Defendant's attempt to collect the debt by legal action was wrongful.[5]  Plaintiff submits the affidavits of Clark (his mother), Wanda Sternberg (his current wife), and Attorney Richard Moxley, III.  Clark avers that on July 28, 2018, after the lawsuit was filed, she emailed Defendant informing it that Plaintiff had advised Zelda several years earlier that he was not responsible for Adriana's dental services and that as a result of his communication Zelda ceased collection efforts.  (*See* Affidavit of Willie Clark ("Clark Affidavit"), Doc. No. 27-8 at ¶ 4.)  Clark contacted Zelda on August 3, 2018, and was informed by an employee identified as "Bridget" that the balance was in Adriana's name and that Plaintiff had a zero balance with Zelda.[6]  (*Id.* ¶ 8.)  Sternberg avers that she understood from speaking with Plaintiff, with whom she resided from 2014 to 2017, that he told Zelda "he was not responsible for the charges made to the account based upon his legal separation" and he had received no further statements on the account. (*See* Affidavit of Wanda Sternberg ("Sternberg Affidavit"), Doc. No. 27-10 at ¶¶ 7-8.) When Defendant sent a demand for the debt to Sternberg's residence, she wrote: "This is

---

[5] Notably, Plaintiff did not file an affidavit on his own behalf in this lawsuit.  The Court notes that Defendant filed motions to strike two affidavits in their entirety and portions of the third affidavit attached to Plaintiff's Response in Opposition.  (Docs. No. 32, 33, 34.)  Plaintiff filed timely responses in opposition to each motion.  (Docs. No. 40, 41, 42.)

[6] Lyons' supplemental affidavit refutes Clark on this point.  Lyons attests that Plaintiff never communicated to Zelda that he was not responsible for the $697.00 balance on his account.  (*See* Lyons II, Doc. No. 30-1 at 3.)

Adriana's Debt" on the letter and returned it to Defendant.  (*Id*. at ¶ 10.)  Sternberg also states that Adriana incurred the charges after she was legally separated from Plaintiff and that Sternberg engaged Attorney Richard Moxley, III to handle the collection lawsuit filed by Defendant.  (*Id*. at ¶ 11-12.)  Attorney Moxley submitted an affidavit stating his opinion that the debt was uncollectible as an open account with a three-year limitations period, or alternately as an account stated or contract, both of which have a limitations period of six years.  (*See* Affidavit of Richard Moxley, III ("Moxley Affidavit"), Doc. No. 27-9 at ¶ 4.) Attorney Moxley informed Defendant of his opinion with a recommendation that the case be dismissed on August 7, 2018, and August 20, 2018.  (*Id*. at ¶¶ 5, 7.)

On August 8, 2018, Beckman named Adriana as a codefendant in the small claims lawsuit.  (Doc. No. 27-4.)  In addition, on the same date, Attorney Moxley filed a motion to dismiss the suit as time-barred under all alternate theories – either open account, account stated, or contract.  Attorney Moxley argued that because either limitations period should be calculated from April 18, 2012, the date of Plaintiff's last monetary transaction with Zelda, the filing of the small claims suit on July 20, 2018, was time-barred under all circumstances.[7]  (Doc. No. 1-5.)  Beckman filed a motion to dismiss the suit after reaching a financial settlement with Adriana on September 28, 2018.

Plaintiff filed this action for damages under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*., ("FDCPA"), alleging Defendant's small claims suit for the Zelda

---

[7] April 18, 2012, was the last date Zelda received an insurance credit for services rendered to Adriana.  (Doc. No. 27-7 at 2.)

debt collection was time-barred thus it constituted (1) an attempt to collect a debt not legally owed through the use of false and/or misleading representations in violation of §§ 1692e(2), 1692e(5), and 1692e(10); and (2) an attempt to collect expenses incidental to the principal obligation in violation of § 1692f(1).  For these alleged violations of the FDCPA, which is alleged in Count I of the Complaint, Plaintiff seeks actual and compensatory damages pursuant to § 1692k(a)(1), and statutory damages of $1,000 under § 1692k(a)(2)(A).  Plaintiff also requests costs and attorney's fees pursuant to § 1692k(a)(3). (Doc. No. 1 at ¶¶ 26-27.)  Plaintiff also alleges state law claims against Defendant for negligent, wanton and intentional conduct (Count II), harassment (Count III), invasion of privacy (Count IV), and negligent and wanton hiring, supervision and/or training (Count V).  (*Id*. at ¶¶ 28-48.)

Defendant moves for summary judgment on the FDCPA claims, arguing that it filed suit for collection on a valid debt owed within the six-year limitations period applicable to accounts stated and contracts, as calculated from September 28, 2012, the due date for the payment demanded by Zelda on the account balance for services rendered to Plaintiff and Adriana.  (Doc. No. 20 at 11-14.)  Further, Defendant raises a bona fide error defense should the court find the debt subject to a three-year limitations period.[8]  (*Id*. at 19-23.) Finally, Defendant argues it is entitled to summary judgment on Plaintiff's state law claims. (*Id*. at 23-28.)

---

[8] Plaintiff filed a motion to strike Defendant's alternate defense of bona fide error on the grounds that it was not adequately plead pursuant to Rule 9(b) of the Federal Rules of Civil Procedure. (Doc. No. 28.)

Plaintiff responds that summary judgment is not appropriate as to the FDCPA claims because he has demonstrated that a genuine issue of material fact exists as to whether the account was an open account subject to a three-year limitations period and whether Defendant's lawsuit for collection was time-barred on the filing date of July 20, 2018. (Doc. No. 27.) Plaintiff does not oppose summary judgment in favor of Defendant as to his state-law claims. (*Id*. at 6, 34.)

## IV.   DISCUSSION

A. Plaintiff's FDCPA Claims

"Congress enacted the FDCPA to 'eliminate abusive debt collection practices by debt collectors . . . .'" *Caceres v. McCalla Raymer, LLC*, 755 F.3d 1299, 1301 (11th Cir. 2014). "In order to prevail on an FDCPA claim, a plaintiff must prove that: (1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Janke v. Wells Fargo & Co*., 805 F. Supp. 2d 1278, 1281 (M.D. Ala. 2011) (quoting *Kaplan v. Assetcare, Inc*., 88 F. Supp. 2d 1355-1360-61 (S.D. Fla. 2000)). The Court considers each element in turn.

The Court notes that because the limitations period for FDCPA actions (codified at 15 U.S.C. §1692k(d)) begins to run on the date the violation occurs, Plaintiff's only viable FDCPA claims relate to the filing of the lawsuit and cannot include Defendant's earlier collection efforts. *Rotkiske v. Klemm*, _ U.S. _, 140 S. Ct. 355, 358 (2019); *Edwards v. Solomon and Solomon, P.C.*, _ F. App'x _, 2020 WL 5816754, at *2 (11th Cir. Sept. 30, 2020) ("Congress specifically provided for a one-year limitations period for FDCPA

claims.")  This suit was filed on July 19, 2019, just within one year of Defendant's small claims action filed on July 20, 2018.  *See McCorriston v. L.W.T., Inc.,* 536 F. Supp. 2d 1268, 1272 (M.D. Fla. 2008) (holding that allegation of a discrete violation of the FDCPA within the limitations period is actionable despite related collection efforts outside of one-year period.)  Thus, the only collection activity of the Defendant that is before this Court which forms the basis of a FDCPA claim is Defendant's filing of the small claims suit to recover on the Zelda debt.  The first element of an FDCPA claim as stated in *Janke* is satisfied.

Section 1692a(6) defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. §1692a(6).  Although Defendant denied the allegation in the Complaint that it is a "debt collector" in its Answer, it acknowledges in its motion for summary judgment that it "undertook collection efforts on behalf of its client, Zelda Court Dental Care, LLC" and Beckman's affidavit states that his practice is primarily business and consumer collections.  (Doc. No. 9 at ¶ 4; Doc. No. 20 at 4; Doc. No. 21-3 at 1.)  These statements demonstrate that Defendant acted as a debt collector and was engaged in collection activity when it filed the small claims action against Plaintiff.  Thus, the second element of an FDCPA claim as stated in *Janke* is satisfied.

As to the third element of an FDCPA claim as stated in *Janke*, if the pleadings and exhibits before the Court establish that Defendant engaged in an act or omission in

violation of the FDCPA, summary judgment in its favor must be denied.  With that in mind,

the Court addresses the violations of the FDCPA as alleged by Plaintiff.

      1.   Violations of 15 U.S.C. § 1692e

Plaintiff's first FDCPA claims fall under 15 U.S.C. § 1692e.  The Complaint

correctly sets forth the specific provisions of § 1692e of the FDCPA which Plaintiff alleges

Defendant violated.  (Doc. No. 1 at ¶ 26(a).)  Under § 1692e,

> [a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> . . .
>
> (2)    The false representation of –
>
>     (A) the character, amount, or legal status of any debt; or
>     (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.
>
> . . .
>
> (5)    The threat to take any action that cannot legally be taken or that is not intended to be taken.
>
> . . .
>
> (10)    The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. § 1692e.  This court has held that filing a time-barred civil collection action in

state court constitutes a false and deceptive collection practice which violates the FDCPA.

*Kimber v. Fed. Fin. Corp.*, 668 F. Supp. 1480 (M.D. Ala. 1987).  The Supreme Court has

"assume[d], for argument's sake, that the precedent is correct in [a civil] context." *Midland*

*Funding, LLC v. Johnson*, _ U.S. _, 137 S. Ct. 1407, 1413 (2017).

In order to determine if Defendant is entitled to summary judgment on Plaintiff's § 1692e claims, the Court must determine (1) whether Plaintiff was responsible for the Zelda debt, and (2) whether the small claims lawsuit was barred by the applicable statute of limitations.  If the small claims suit was barred, then Defendant, by bringing the barred suit, "engaged in an act or omission prohibited by the FDCPA."  *See Janke*, *supra*.

    a.  Responsibility for the Zelda Debt

The Court has reviewed documents submitted by both parties relevant to the origin and legal status of the debt.  Lyons, the Zelda custodian of records explained that when Plaintiff opened a family account for the use of himself and then-wife Adriana, in October of 2006, he agreed "to pay for services not covered by [his] insurance as well as any legal and/or collection fees necessary for the collection of this debt."  (Doc. No. 21-1 at 2-3, 7.) The account statement submitted by Plaintiff shows that Zelda maintained a single record for services rendered and payments received.  (Doc. No. 27-7.)  At least two entries show that charges for services to Adriana were partially covered by Plaintiff's insurance policy, which is consistent with the Zelda agreement that he would "pay for services not covered by insurance" and consistent with Lyons' recollection that Plaintiff arranged for his wife to be covered by his insurance and included under his account.  (*Id*., *see* entries for March 16, 2011 and April 18, 2012.)  The Court therefore finds that the undisputed evidence shows Plaintiff's consent to and knowledge of his responsibility for expenses arising from services to Adriana when he opened his account with Zelda.

The affidavits from Clark and Sternberg assert that Plaintiff disavowed responsibility for payment of Adriana's dental expenses after the Reddick's separation and

divorce.  Sternberg asserts in her affidavit that, "in or around late 2011 and early 2012," Plaintiff told Zelda that he was no longer responsible for Adriana's charges "based upon the legal separation" and that Adriana "incurred those subject charges after [the Reddicks] became legally separated."  (Doc. No. 27-10 at ¶¶ 8, 11.)  At the summary judgment stage, the Court must believe this evidence from Plaintiff, the nonmovant.  *See Anderson, supra.* However, even if this "late 2011 or early 2012" statement was made by Plaintiff, it does not refute that Plaintiff entered the Zelda agreement in 2006 and later agreed to pay the Zelda debt during the divorce in April 2012.   Indeed, Plaintiff's separation agreement, dated April 13, 2012, specifically provided that he was responsible for all marital debt "of any kind whatsoever" in existence on the date of separation (Doc. No. 21-2 at 5, ¶ 5) and Zelda's account records show $697.00 was owed for services rendered to Adriana between December 29, 2011, and April 10, 2012, a date range preceding the legal separation.  (Doc. No. 27-7 at 2).  Regardless of what Plaintiff told Sternberg or Zelda in "late 2011 or early 2012", the undisputed evidence before the Court establishes that Plaintiff was responsible for the Zelda debt during the time at issue.  Plaintiff's purported statement to Zelda in "late 2011 or early 2012" does not create a genuine dispute as to whether he entered the Zelda Agreement in 2006 or later entered the April 2012 separation agreement.  In other words, Sternberg's affidavit testimony does not create a genuine issue for trial.  *See Celotex*, 477 U.S. at 324 ("nonmoving party [must] . . . designate 'specific facts showing that there is a genuine issue for trial' ").

Similarly, Clark states in her affidavit that "on July 28, 2018, she advised 'Donna[,]' an employee of Defendant, that Plaintiff "had previously advised [Zelda] several years ago

that he was not responsible for the charges." (Doc. No. 27-8 at ¶ 4.)  Clark's affidavit does not provide the specific year or even a time range of when that statement was supposedly made by Plaintiff to Zelda.  Such a vague statement does not establish the presence of a genuine dispute for trial.  *See Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991) (holding that a party cannot satisfy its burden at summary judgment by relying on legal conclusions or conclusory allegations).

In short, Plaintiff's attempt to establish the presence of a genuine dispute for trial is unavailing.  The undisputed evidence shows that Plaintiff was responsible for the Zelda debt under the 2006 Zelda agreement and under the 2012 separation agreement.  Plaintiff has not shown there is a genuine dispute as to any material fact on this issue.

b.   Statute of Limitations

Because Plaintiff was first responsible for fees incurred by Adriana under the terms of the Zelda agreement and again when he agreed to pay all marital debt under the terms of their separation and divorce, the viability of each parties' arguments ultimately depends upon whether the debt is subject to a three or six-year limitations period.  Plaintiff asserts that the Zelda debt was an open account with a three-year statute of limitations measured from April 18, 2012 (the last payment for services to Adriana) through April 18, 2015.[9] Defendant argues the Zelda debt was a breach of contract or account stated with a six-year statute of limitations measured from September 28, 2012 (the tenth and final day allowed for payment by Zelda's formal payment demand of September 18, 2012), through

---

[9] *See* Ala. Code § 6-2-37 (1975) (three-year statute of limitations for open account).

September 28, 2018.[10] (Doc. No. 20 at 12; Doc. No. 30 at 9-18.)  If the three-year statute of limitations applies, the small claims suit which was filed by Defendant on July 20, 2018, was time-barred.  If the six-year statute of limitations applies, the small claims suit which was filed by Defendant was not time-barred.

Alabama law controls whether an account is open or stated.  "The question of account stated or open account is not a mere matter of procedure or of different forms of action, but is also a substantive question as to different kinds of claims.  In Alabama, actions upon a stated account must be commenced within six years, while the limitation as to open accounts is only three years." *Ingalls v. Ingalls Iron Works Co.*, 258 F.2d 750, 751 (5th Cir. 1958).[11]

> The theory of an open account is a method of proving amounts owed.  1A C.J.S. *Account Stated* § 2.  An open account is "an account under which the parties continue to do business, adding debits and credits, or a running account used by the parties to settle several transactions over an extended period." *Id.*; *see also Rose Manor Health Care, Inc. v. Barnhardt Mfg. Co.*, 608 So.2d 358, 360 (Ala. 1992) ("[T]o establish an open account there must be an account based upon running or concurrent dealings, **the dealings must not have been closed, settled or stated,** and some term of the contract must remain to be settled between the parties, or the agreement must contemplate further transactions between the parties.")  Proof of an account generally requires the plaintiff to reasonably satisfy the finder of fact of the amount due, and the defendant may contest the same.

---

[10] *See* Ala. Code § 6-2-34(9) (1975) (six-year statute of limitations for breach of contract); Ala. Code § 6-2-34(5) (1975) (six-year statute of limitations for account stated).

[11] *See Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.)

*NTA Graphics South, Inc. v. Axiom Impressions, LLC*, 413 F. Supp. 3d 1164, 1180-81 (N.D. Ala. 2019) (emphasis added).

> The theory of an account stated is another method of proving amounts owed. 1A C.J.S. *Account Stated* § 2. "An account ceases to be an open account and becomes an account stated when the debtor assents to the balance stated." *Id.*; *see also* 1A C.J.S. *Account Stated* § 17. **("The conversion of an open account into an account stated [ ] is an operation by which the parties assent to a sum as the correct balance due from one to the other** . . . .")

*Id.* at 1181 (emphasis added). A prima facie case on an account stated is made when the creditor "proves (1) a statement of the account between the parties is balanced and rendered to the debtor; (2) there is a meeting of the minds as to the correctness of the statement; and (3) the debtor admits liability." *Ayers v. Calvary SVP I, LLC*, 876 So. 2d 474, 477 (Ala. Civ. App. 2003) (citing *Univ. of South Ala. v. Bracy*, 466 So. 2d 148, 150 (Ala. Civ. App. 1985)); *Car Center, Inc. v. Home Indem. Co., Inc.*, 519 So. 2d 1319, 1323 (Ala. 1988). "The debtor's admission to the correctness of the statement and to his liability thereon can be express or implied. An account rendered, and not objected to within reasonable time becomes an account stated, and failure to object will be regarded as an admission of correctness of the account." *Car Center*, 519 So. 2d at 1323 (citing *Home Federal Savings & Loan Assoc. v. Williams*, 276 Ala. 37, 158 So. 2d 678, 683 (Ala. 1963)). "An implied agreement to pay a bill can arise only where there has been a showing that the bill was rendered and the recipient of the bill failed to object within a reasonable time." *Id.* at 1323 (citation omitted).

The Court has reviewed the many state and federal cases regarding the distinctions between open accounts and accounts stated in the parties' briefs and discovered that "[i]t

is not as easy as it should be to identify what does – or does not – constitute a cause of action for 'open account.' " *H & H Design Builders, Inc., v. Travelers' Indem. Co*., 639 So. 2d 697, 700 (Fla. 5th DCA 1994). "An 'open account' is difficult to define. As noted in 1 Am. Jur. 2d 373, other synonymous phrases include 'open current account[,]' 'running account[,]' and 'mutual open, current account.' " *Robert W. Gottfried, Inc. v. Cole*, 454 So. 2d 695, 696 (Fla. 4th DCA 1984). The account history for the Zelda debt shows that it was a "running account" or open account as the charges and payments were ongoing, with no differentiation between the Reddicks for purposes of the balance due on a given date. However, it is well-established that an open account can be converted into an account stated when an account is rendered and not objected to within a reasonable time. *Compass Bank v. Limon*, 464 F. App'x 782, 785, 86 (11th Cir. 2012) (citing *Home Federal Savings & Loan*, 158 So. 2d at 683); *NTA Graphics South, Inc.*, 413 F. Supp. 3d at 1181; *In re Templeton*, 538 B.R. 578, 584 (N.D. Ala. 2015) ("[A]ny debt that was originally an open account . . . could be converted into an account stated . . . by rendering a statement showing the charges and receiving no objection to those charges . . . ."). The Court finds such conversion occurred in this case.

The undisputed evidence shows that Zelda rendered a statement to Plaintiff when it mailed a demand for payment on September 18, 2012, to Plaintiff's known address.[12] That communication to Plaintiff informed him that his payment was demanded within ten days.

---

[12] "The presumption of the law is that a letter, properly addressed with sufficient postage, and unreturned to the sender whose address is shown on the envelope, was received by the addressee." *Currie v. Great Central Ins. Co*., 374 So. 2d 1330 (Ala. 1979) (citing *Harrell v. Alabama Farm Bureau Mut. Cas. Ins. Co*., 287 Ala. 259, 251 So. 2d 220 (1971)).

Lyons' affidavit testimony shows that said statement was rendered to Plaintiff and he did not object to the balance demanded. (Doc. No. 30-1 at 3.) Plaintiff's failure to object converted the open account into an account stated.

Plaintiff argues that he did not impliedly consent to the amount stated in the Zelda statement. (Doc. No. 27 at 20.) But Plaintiff does not present any evidence supporting his argument and argument from his lawyer does not suffice to defeat summary judgment. *See Skyline Corp. v. N.L.R.B.*, 613 F.2d 1328, 1337 (5th Cir. 1980) ("'Statements by counsel in briefs are not evidence."). The affidavit testimony from Sternberg and Clark that Plaintiff informed Zelda of his objection to the debt in "late 2011 or early 2012" or "several years ago[,]" respectively, do not establish that Plaintiff objected to the Zelda demand during the ten day window the payment demand allowed in September 2012. Thus, the assertion of fact by Lyons that Plaintiff did not object to the charges in the payment demand is undisputed and no genuine dispute of fact exists on that issue. *See* Fed. R. Civ. P. 56(e) ("[if] a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion").

In addition, the Court finds the payment demand from Zelda was sufficient to transform Plaintiff's open account into a stated account. Even though the payment demand did not itemize the charges assessed on the account, it was sufficient under Alabama law. *See Compass Bank*, 464 F. App'x at 785-86 (holding a demand letter which only showed the balance due sufficient under Alabama law to render an "account stated"). The evidence shows that Zelda issued a statement of the account showing the balance due from Plaintiff and that his failure to object within a reasonable time impliedly created an account stated

and simultaneously served as "an admission of correctness of the account." *Car Center*, 519 So. 2d at 1323; *see also In re Pritchett*, No. 06-40077-JJR-13, 2006 WL 3103161, at *1 (N.D. Ala. Oct. 26, 2006) (noting that the second and third elements of proof of an account stated are implied if the debtor fails to object within a reasonable time after the account statement is rendered).

Plaintiff's assertion that he has raised a factual issue as to whether his account with Zelda was open and therefore unactionable after three years lacks a "real basis in the record" before the Court. *Compass Bank*, 464 F. App'x at 785 (citing *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009)). He cannot point to an affidavit or declaration that rebuts any element of an account stated as defined under Alabama law, and so cannot establish the "presence of a genuine dispute" on this issue. *See* Fed. R. Civ. P. 56(c)(1)(a-b). Collections on the account were therefore actionable within the six-year statute of limitations calculated from September 29, 2012, the date after which Plaintiff was required to pay and failed to do so.

Further, the Zelda debt was also subject to the six-year statute of limitations applicable to a breach of contract. Defendant asserts the Zelda agreement is a contract (Doc. No. 20), and Plaintiff admits the Zelda agreement "is a contractual guarantee related to Plaintiff . . . ." (Doc. No. 27 at 19). Under Alabama law, "[t]he statute of limitations on a contract action runs from the time that a breach occurs." *AC, Inc. v. Baker*, 622 So. 2d 331, 335 (Ala. 1993); *Seybold v. Magnolia Land Company*, 376 So. 2d 1083 (Ala. 1979) ("Where the [promisor] has agreed under the contract to do a particular thing, there is a breach and the right of action is complete upon his failure to do the particular thing he

agreed to do."). Here, Plaintiff agreed to pay debts owed for services to Zelda in the Zelda agreement. Zelda made a payment demand in September 2012 to Plaintiff to pay for the debt owed and Plaintiff failed to pay despite his agreement to do so. Simply put, Plaintiff breached the contract in September 2012 and the expiration of the six-year statute of limitations did not occur until September 2018.

In short, Defendant's filing of the small claims lawsuit on July 20, 2018, was within the six years allowed from the date of Plaintiff's breach of contract or default on the account stated, and thus was not a time-barred collection action in violation of § 1692e of the FDCPA. The third element of an FDCPA claim as stated in *Janke* is not satisfied. Defendants are entitled to summary judgment on Plaintiff's § 1692e claims.

2.   Violations of 15 U.S.C. § 1692f

Plaintiff also alleges that Defendant took "illegal actions against [Plaintiff], in violation of 15 U.S.C. §§ 1692f and 1692f(1)." (Doc. No. 1 at ¶ 26(b).) Section 1692f(1) provides

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

15 U.S.C. § 1692f(1). "Section 1692f generally prohibits the use of 'unfair or unconscionable means to collect or attempt to collect any debt.' Whether conduct qualifies as unfair or unconscionable is assessed objectively from the point of view of the 'least

sophisticated consumer.' " *Miljkovic v. Shafritz and Dinkin, P.A.*, 791 F.3d 1291, 1308 (11th Cir. 2015).

The crux of Plaintiff's claim is his assertion that Defendant knew he was not responsible for the Zelda debt, and knew the statute of limitations had expired when it filed suit against him in July 2018.  As discussed above, however, it is undisputed that Plaintiff was responsible for the Zelda debt and the statute of limitations had not expired when Defendant filed its small claims suit against Plaintiff.  As Defendant correctly argues, the Court's finding that the small claims lawsuit filed by Defendant was not time-barred defeats Plaintiff's § 1692f claim.  (*See* Doc. No. 20 at 7-8) ("Thus, if money was owed by [Plaintiff] and the lawsuit was timely filed, summary judgment is clearly due in favor of the Defendant on all allegations on Plaintiff's Complaint.")  Plaintiff has presented no evidence that Defendant used unfair or unconscionable means to collect the Zelda debt and thus his § 1692f claim must fail.

c.  Plaintiff's State Law Claims

Plaintiff also alleges state law claims against Defendant for negligent, wanton and intentional conduct (Count II), harassment (Count III), invasion of privacy (Count IV), and negligent and wanton hiring, supervision and/or training (Count V).  Defendant moves for summary judgment on these claims (Doc. No. 20) and Plaintiff states in response that he does not oppose summary judgment on these claims (Doc. No. 27 at 34).  Considering Plaintiff's lack of opposition, the Court finds that summary judgment is due to be granted on said claims.

d. Motions to Strike

The parties have resorted to quibbling about exhibits submitted in support of or in opposition to summary judgment and filed motions to strike affidavits or portions of briefs. (*See* Docs. No. 28, 31, 32, 33.)  As to Defendant's motion to strike a portion of Plaintiff's reply brief (Doc. No. 31) and Plaintiff's motion to strike a portion of Defendant's Exhibit D (Doc. No. 28), the Court is persuaded by an order entered by United States District Judge Myron H. Thompson stating,

> The Federal Rules of Civil Procedure delineate the general use of a motion to strike: "Upon motion made by a party . . . the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f) (emphasis added). The terms of the rule make clear that "[o]nly material included in a 'pleading' may be subject of a motion to strike. . . . Motions, briefs or memoranda, objections, or affidavits may not be attacked by the motion to strike." 2 James Wm. Moore, et al., Moore's Federal Practice § 12.37[2] (3d ed.1999). Therefore, as an initial matter, the motion to strike must be denied as to all non-pleadings, and, in this case, that would be all documents at issue. *See Lowery v. Hoffman*, 188 F.R.D. 651, 653 (M.D. Ala. 1999) (Thompson, J.); Fed. R. Civ. P. 7(a) (a "pleading" is "a complaint and an answer; a reply to a counterclaim denominated as such; an answer to a cross-claim, if the answer contains a cross-claim; a third-party complaint, if a person who was not an original party is summoned under the provisions of Rule 14; and a third-party answer, if a third-party complaint is served.").

*Reeves-Howard v. S. Union State Cmty. Coll.*, No. CIV.A. 3:07CV967MHT, 2009 WL 1442059, at *1 (M.D. Ala. May 20, 2009).  Accordingly, the motions (Docs. No. 28, 31) are due to be denied.

Further, as to the motions to strike affidavits filed by Defendant (Docs. No. 32, 33, 34), the Court is persuaded by an opinion issued by former United States District Judge Mark E. Fuller stating,

Rule 56(e) makes it plain that affidavits or declarations submitted in support of or opposition to a motion for summary judgment

> shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall affirmatively show that the affiant is competent to testify to the matters stated therein.

Fed. R. Civ. P. 56(e) (emphasis added).  The requirements of Rule 56 make it plain that affidavits which set forth conclusory arguments rather than statements of fact based on personal knowledge are improper.  *See, e.g., Thomas v. Ala. Council on Human Relations, Inc*., 248 F. Supp. 2d 1105, 1112 (M.D. Ala. 2003); *Story v. Sunshine Foliage World, Inc*., 120 F. Supp. 2d 1027, 1030 (M.D. Fla. 2000).  *Accord, Leigh v. Warner Bros., Inc*., 212 F .3d 1210, 1217 (11th Cir. 2000).  Sworn statements which fail to meet the standards set forth in Rule 56(e) may be subject to a motion to strike.  *See, e.g., Thomas*, 248 F. Supp. 2d at 1112; *Givhan v. Electronic Eng'rs, Inc*., 4 F. Supp. 2d 1331, 1334 (M.D. Ala. 1998).  However, the Court need not strike the entire affidavit, rather it may strike <u>or disregard the improper portions and consider the remainder of the testimony or statement</u>.  *Id*. at p. 1334 n. 2.

*Dortch v. City of Montgomery*, No. 2:07CV1034-MEF, 2009 WL 959638, at *1 (M.D. Ala. Apr. 8, 2009).  Thus, the Court will "exercise its discretion to disregard any improper portions of the challenged affidavit or declarations" and finds it unnecessary to strike portions of affidavits as requested.  *See id.*  The motions (Docs. No. 32, 33, 34) are due to be denied as moot.

Finally, as Defendant correctly argues, Plaintiff's motion to strike Defendant's affirmative defense for bona fide error (Doc. No. 28) is untimely.  The motion to strike urges the Court to strike the affirmative defense from Defendant's Answer because it is not plead with particularity as required by Federal Rule of Civil Procedure 9(b).  (*See id*.)  Federal Rule of Civil Procedure 12(f) governs motions to strike an insufficient defense from a pleading.

> The court may strike from a pleading an insufficient defense or any
> redundant, immaterial, impertinent, or scandalous matter.  The court may act:
>> (1) on its own; or
>> (2) on motion made by a party either before responding to the pleading
> or, if a response is not allowed, within 21 days after being served with the
> pleading.

Fed. R. Civ. P. 12(f).  Plaintiff was served with the Answer in August 2019 (Doc. No. 9),

hence his motion to strike that was filed almost a year later, in July 2020, is untimely and

due to be denied.  *See Tyson v. Dunn*, No. 3:17-CV-719-WKW, 2020 WL 2815120, at *2

(M.D. Ala. May 29, 2020) (denying motion to strike that was filed "almost one year past

the 21-day deadline established by Rule 12(f)"); *McCall v. Houston Cty.*, No. 1:11-cv-559-

MHT, 2014 WL 2949291, at *1–2 (M.D. Ala. June 30, 2014) (denying as "tardy and

inattentive" a motion to strike filed two and a half months after the relevant pleading);

*Guarino v. Auburn Univ.*, No. 3:09-cv-0080-MEF, 2009 WL 3379696, at *2 & n.2 (M.D.

Ala. Oct. 20, 2009) (denying as untimely a motion to strike filed 127 days after the relevant

pleading).  Further, Plaintiff has not demonstrated how he is prejudiced by the affirmative

defense.  *See Tyson*, , 2020 WL 2815120, at *2.  The motion to strike (Doc. No. 28) is

denied as untimely.

## V.    CONCLUSION

For the foregoing reasons, it is hereby ORDERED as follows:

1.    Defendant's Motion for Summary Judgment (Doc. No. 20) is GRANTED as

to all claims in the Complaint.

2.    Plaintiff's Motion to Strike (Doc. No. 28) is DENIED.

3.      Defendant's Motion to Strike Portion of Plaintiff's Reply Brief (Doc. No. 31) is DENIED.

4.      Defendant's Motion to Strike Affidavit of Wanda Sternberg (Doc. No. 32) is DENIED as MOOT.

5.      Defendant's Motion to Strike Affidavit of Richard G. Moxley, III (Doc. No. 33) is DENIED as MOOT.

6.      Defendant's Motion to Strike Affidavit of Willie Clark (Doc. No. 34) is DENIED as MOOT.

A separate judgment shall issue.

DONE this 18th day of March, 2021.


/s/ Jerusha T. Adams
JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE